UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

BRADLEY DAVID BANNULL,               :
                                     :
            Plaintiff                :    No. 3:11-CV-02150
                                     :
      vs.                            :    (Judge Kosik)
                                     :
CAROLYN W. COLVIN, ACTING            :
COMMISSIONER OF SOCIAL               :         FILED
SECURITY,                            :        SCRANTON
                                     :
            Defendant                :      APR 1 6 2013

                         MEMORANDUM       PER _____
                                              DEPUTY CLERK

## BACKGROUND

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Bradley David Bannull's claim for supplemental security income benefits.

On March 16, 2009, Bannull protectively filed[1] the application for supplemental security income benefits. Tr. 106, 137-143 and 171.[2] On July 29, 2009, the Bureau of Disability Determination[3] denied Bannull's application. Tr. 112-116.

---

1. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

2. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of the Answer on January 18, 2012.

3. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability

(continued...)

On September 22, 2009, Bannull requested a hearing before an administrative law judge. Tr. 16 and 117-120. After about 13 months had passed, a hearing was held before an administrative law judge on October 19, 2010. Tr. 30-76. On December 14, 2010, the administrative law judge issued a decision denying Bannull's application for supplemental security income benefits. Tr. 16-26.

The Social Security Administration operates several types of disability benefits programs, including disability insurance benefits and supplemental security income benefits. Bannull also protectively filed an application for disability insurance benefits on March 16, 2009. Tr. 133-136.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Bannull met the insured status requirements of the Social Security Act through March 31, 2007. Tr. 16, 18 and 146.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status

---

3. (...continued)
benefits on behalf of the Social Security Administration. Tr. 107 and 112.

is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

Bannull's application for disability insurance benefits was also denied initially by the Bureau of Disability Determination and by the ALJ in his decision of December 14, 2010. Bannull does not contest the denial of his claim for disability insurance benefits in the present appeal because his date last insured was March 31, 2007, and his alleged disability onset date is December 1, 2008.

On February 10, 2011, Bannull requested that the Appeals Council review the administrative law judge's decision denying his claim for SSI benefits. Tr. 12 and 195-197. After about 7 months had passed, the Appeals Council on September 13, 2011, denied Bannull's request for review. Tr. 1-4 and 6-10. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Bannull then filed a complaint in this court on November 16, 2011. Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on April 19, 2012, when Bannull elected not to file a reply brief.

Bannull, who was born in the United States on May 6, 1970, graduated from high school in 1988 and can read, write,

---

4. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

speak and understand the English language and perform basic mathematical functions. Tr. 137, 167, 174, 179 and 185. During his elementary and secondary schooling Bannull attended regular education classes. Tr. 179. After graduating from high school, Bannull did not obtain any other training. Id.

Bannull has past relevant employment[5] as an automobile mechanic which was described as skilled, medium work by a vocational expert.[6]

---

5. Past relevant employment in the present case means work performed by Bannull during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

6. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are

(continued...)

Records of the Social Security Administration reveal that Bannull had reported earnings in the years 1987, 1989, 1992 through 2000, 2003, 2004, 2007 and 2009. Tr. 145. Bannull's highest annual earnings were in 1997 ($10,162.00) and his lowest in 1987 ($277.26). Id. Bannull's total earnings during those fifteen years were $60,997.08 Id. Bannull's work and earnings amounted to substantial gainful activity only in three of those years - 1996 ($6593.00), 1997 and 1998 ($9168.00).[7] In 2009 Bannull's reported earnings were $762.39. Bannull has no reported earnings after 2009. Id.

---

6. (...continued)
    additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

    (c) *Medium work.* Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.

    (d) *Heavy work.* Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

7. Pursuant to Federal Regulations a person's earnings have to rise to a certain level to be considered substantial gainful activity. The official website of the Social Security Administration reveals that in 1996 through 1998 that amount was $500 per month ($6000 per year); in 1999 and 2000 the amount was $700 per month ($8400 per year). Substantial Gainful Activity, http://www.ssa.gov/oact/cola/sga.html (Last accessed April 12, 2013).

The record reveals that Bannull has a substantial history of drug (heroin, cocaine and marijuana) and alcohol abuse. However, it is undisputed and the record reveals that Bannull has been abstinent since sometime in March, 2009.

Bannull claims that he became disabled on December 1, 2008, because of physical and mental impairments. The physical impairment alleged is chronic plantar fasciitis[8] and the mental impairments alleged are major depressive disorder, anxiety and bipolar disorder. Doc. 10, Plaintiff's Brief, p. 1-5. Bannull claims the chronic plantar fasciitis causes pain and swelling in

---

8. "Plantar fasciitis . . . involves pain and inflammation of a thick band of tissue, called the plantar fascia, that runs across the bottom of [the] foot and connects [the] heel bone to your toes. Plantar fasciitis is one the most common causes of heel pain. Plantar fasciitis commonly causes stabbing pain that usually occurs with [the] very first step in the morning. Once your foot limbers up, the pain of plantar fasciitis normally decreases, but it may return after long periods of standing or after getting up from a seated position." Plantar fasciitis, Definition, Mayo clinic staff, http://www.mayoclinic.com/health/plantar-fasciitis/DS00508 (Last accessed April 12, 2013). Causes of plantar fasciitis are the overstreching or overuse of the plantar fascia, the thick band of tissue. Plantar fasciitis, A.D.A.M. Medical Encyclopedia, PubMed Health, U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0004438/ (Last accessed April 12, 2013). It "is commonly thought of as being caused by a heel spur, but research has found that this is not the case. On x-ray, heel spurs are seen in people with and without plantar fasciitis." Id.; see also Plantar Fasciitis and Bone Spurs, OrthoInfo, American Academy of Orthopaedic Surgeons, http://orthoinfo.aaos.org/topic.cfm?topic=a00149 (Last accessed April 12, 2013). Risk factors for plantar fasciitis include tighter calf muscles that make it difficult to flex the foot and bring the toes up toward the shin, obesity, a very high arch, repetitive impact activity and new or increased activity. Id.

his feet and that he must often elevate his feet on an unscheduled basis because of pain. Id. at 2-3.

The alleged disability onset date of December 1, 2008, has no impact on Bannull's application for supplemental security income benefits because supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." See C.F.R. § 416.501. As stated above Bannull's SSI application was filed on March 16, 2009. Consequently, Bannull is not eligible for SSI benefits for any period prior to April 1, 2009.

For the reasons set forth below we will vacate the decision of the Commissioner denying Bannull's application for supplemental security income benefits and remand the case to the Commissioner for further proceedings.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial

7

evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent

8

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

## SEQUENTIAL EVALUATION PROCESS

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for
> work. For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the
> national economy" means work which exists in significant
> numbers either in the region where such individual
> lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims. See 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment that is severe or a combination of impairments that is severe,[10]

---

9. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 416.910.

10. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the

(continued...)

(3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[11] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other

---

10. (...continued)
subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2).

11. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**MEDICAL RECORDS**

Before we address the administrative law judge's decision and the arguments of counsel, we will review some of the medical records.

Bannull was hospitalized at the Brooke Glen Behavioral Hospital ("Brooke Glen") from February 11, 2009, to February 20, 2009. Tr. 214-216 and 232. There is really no dispute that Bannull suffers from severe psychiatric impairments. Id. Bannull's diagnosis at the time of discharge from Brooke Glen was schizoaffective disorder, bipolar type, and polysubstance dependence (cocaine, cannabis and opiates). Tr. 216. His Global Assessment of Functioning (GAF) score at the time of discharge was 50.[12] Id. After his discharge from Brooke Glen, Bannull received

---

12. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3-32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls
(continued...)

treatment and counseling at Scranton Counseling Center. Tr. 231, 240-245 and 287-289. Bannull treatment at Scranton Counseling Center involves individual therapy/counseling sessions and drug therapy. Tr. 231. The record reveals that Bannull from March 13, 2009, through the date of the administrative hearing, October 19, 2010, was treated with several psychotropic medications including Elavil, Risperdal, Buspar, Remeron, Seroquel, Concerta, Klonopin and Abilify. Tr. 37, 58-61 and 287-289.

The record further reveals that Bannull lives at an assisted care facility, Harbor House, where his medications are monitored and dispensed by staff. Tr. 21 and 37-38. Also, after being discharged from Brooke Glen and through October 19, 2010, Bannull was being treated with Suboxone, which is a drug used to treat narcotic (opiate) addiction. Tr. 37.

The record does not contain a physical residual functional capacity assessment from a treating or non-treating physician specifying Bannull's ability to carry, lift, stand, walk or sit. Furthermore, there appears to be only two medical treatment notes in the record relating to Bannull's plantar

---

12. (...continued)
within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id.

fasciitis. The one is handwritten and merely notes that condition and refers Bannull to a podiatrist. Tr. 327. The second is report of the podiatrist, James, M. Haggerty, D.P.M., who examined Bannull on May 8, 2010. Tr. 285. That report states in part as follows:

> This is a 40-year-old male who has bilateral heel pain, a.m. pain, post static pain, difficulty walking and standing. He is an exercise walker and he has been developing pain now for six weeks. X-rays were taken demonstrating no evidence of fracture, dislocation. Anterior calcaneal spur[13] is present. Past history includes osteoarthritis numbness in the lower extremity. He has a history of tobacco use. He also has a history of substance use. He has palpable pedal pulses, atrophic skin changes.[14] He has pain upon stretch of the plantar fascia, stretch of the achilles tendon. He has altered gait. Negative Tinel's sign. The left [foot] is worse than the right. He walks with a limp.

Id. Dr. Haggerty, *inter alia*, administered a cortisone injection and prescribed a plantar fascia night splint. Id.

**DISCUSSION**

The administrative record in this case which, *inter alia*, consists of medical and vocational records is 329 pages in length and we have thoroughly reviewed that record. The medical records reviewed above reveal that Bannull was treated for psychiatric and physical problems.

---

13. A calcaneal spurs is a bony growth in the heel.

14. Atrophy of the skin is thinning of the upper layers of skin making the skin prone to tears and ulcerations.

The administrative law judge went through the 5-step sequential evaluation process and determined that Bannull had the ability to engage in a limited range of medium work and consequently he was not disabled. The administrative law judge at step two found that Bannull had the following severe impairments: anxiety disorder, major depressive disorder, bipolar disorder and polysubstance dependence.[15] The administrative law judge found that Bannull's plantar fasciitis was a non-severe impairment. One of the reasons for so finding was because diagnostic tests – an X-ray and Doppler ultrasound of his lower extremities – revealed "relative benign findings." Tr. 19. There is no indication that the ALJ considered that impairment in setting Bannull's residual functional capacity. In fact the ALJ rejected Bannull's claims that he had pain in his feet which required that he periodically elevate them.

The residual functional capacity set by the administrative law judge was considered a limited range of medium

---

15. An impairment is "severe" if it significantly limits an individuals ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

work because Bannull was restricted to non-goal oriented, non-quota, non-closely scrutinized or monitored unskilled work and work which does not "involve direct customer relations type services or interaction with members of the public, meaning no repetitive or continuous type customer service level interaction with members of the public" or "work that is set forth in a team type environment." Tr. 22. Based on that residual functional capacity and the testimony of a vocational expert, the administrative law judge found that Bannull could perform unskilled, medium work as floor cleaner/waxer, packager and dishwasher, and that there were a significant number of such jobs in the Northeastern region of Pennsylvania. Tr. 25-26.

The vocational expert at the administrative hearing testified that all medium work level jobs require continuous standing during an 8-hour workday. Tr. 68. The vocational expert further testified that there would be no light work positions available that Bannull could perform because of the mental restrictions imposed by the administrative law judge in the residual functional capacity assessment. Tr. 69-73. The vocational expert could not offer any examples of medium exertional level jobs where the individual was not required to engage in continuous standing and walking. Tr. 69.

Bannull argues, inter alia, that the administrative law judge committed fundamental error by finding that his chronic plantar fasciitis did not constitute a severe impairment. He specifically argues that the reliance on the x-rays of his feet and the Doppler ultrasound of his lower extremities to find that the plantar fasciitis was a non-severe impairment was inappropriate and constituted reversible error. We find merit to this argument. The x-rays and the Doppler Ultrasound are not used to diagnose plantar fasciitis or the severity of that condition. The x-rays were used to determine whether Bannull suffered from any bone fractures and the Doppler ultrasound to determine the venous sufficiency of his lower extremities. Tr. 316 and 318.

The administrative law judge by setting the residual functional capacity at medium work found that Bannull could engage in continuous standing and walking during an 8-hour workday. No physician so indicated and Dr. Haggerty's report of the appointment on May 8, 2010, suggests that Bannull would have difficulty doing so. Tr. 285. Dr. Haggerty noted Bannull's bilateral heel pain, difficulty walking, a history of osteoarthritis , and an altered gait. Id.

Under the circumstances presented, the ALJ's residual functional capacity assessment that Bannull could engage in medium

work which requires continuous walking and standing is not supported by substantial evidence.[16]

The administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

An appropriate order will be entered.

---

16. Our review of the transcript of the administrative hearing reveals that the ALJ initially was going to place some restriction or limitation on Bannull's ability to walk and stand. Tr. 67. However, he then backed off of that position when the vocational expert testified that there would be no light work positions available because of the mental limitations included in the hypothetical question. The mental limitations included in the hypothetical question asked of the vocational expert are the same limitations included in ALJ's ultimate RFC assessment. Tr. 67-76.